766 A.2d 657

**MARYLAND DEPARTMENT OF THE ENVIRONMENT,**

v.

**Antoinette IVES.**

**No. 561, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Feb. 6, 2001.

582

Amanda S. LaForge, Staff Attorney (J. Joseph Curran, Jr., Attorney General, Andrew H. Baida, and J. Van Lear Dorsey, Assistant Attorneys General, on the brief), Baltimore, for appellant.

Lisa O'Mara (Davis and Associates Law Offices, P.A., on the brief), Towson, for appellee.

Argued Before DAVIS, ADKINS, THEODORE G. BLOOM, (retired, specially assigned), JJ.

DAVIS, Judge.

This appeal by the Maryland Department of the Environment (MDE) is from a judgment of the Circuit Court for Anne Arundel County.  In adjudicating a grievance filed by appellee Antoinette Ives, an administrative law judge (ALJ) of the Office of Administrative Hearings (OAH) had ruled that appel-

lee, who suffered a disabling occupational disease, Carpal Tunnel Syndrome, while employed at the MDE, was not entitled to convert "sick/annual leave and compensatory time" to accident leave. On appeal, the circuit court reversed the ALJ's ruling and remanded the case for further administrative proceedings. The MDE's appeal from that judgment presents the following question for our review:

> Did the trial court err in holding that Md.Code (1997 Repl. Vol.), Pers. & Pens. § 9–701(a) permits State employees to use work-related accident leave for treatment of an occupational disease?

## FACTUAL BACKGROUND

Appellee was employed as a Police Communications Operator II with the MDE. Appellant notified the MDE, in February 1996, that she had sustained an injury as a result of her daily computer data entry work and that she had been diagnosed with Carpal Tunnel Syndrome. The Workers' Compensation Commission (Commission), after a hearing on May 6, 1997, determined that appellee had sustained a disabling occupational disease arising out of and in the course of her employment on November 5, 1995. Between June 19, 1996 and November 18, 1997, appellee used a total of 238.5 hours of annual/sick leave and compensatory time for medical treatment and therapy related to the Carpal Tunnel Syndrome.

On November 20, 1997, appellee submitted a written request to the MDE asking the agency to reimburse 238.5 hours of annual/sick leave by converting it to work-related accident leave (which would provide appellee with ample sick leave should she need it in the future). The MDE denied appellee's request on January 30, 1998. Appellee filed a grievance disputing the MDE's denial and, after two hearings at the agency level, appellee's claim was again denied. Appellee appealed the agency's denial to OAH. At the OAH hearing, the MDE moved for summary judgment, which the ALJ granted, ruling that appellee did not "sustain her burden to show that she is entitled to convert used sick/annual leave and

compensatory time to accident leave." Subsequently, appellee appealed the legal conclusions of the ALJ to the Circuit Court for Anne Arundel County, which reversed the ALJ'S ruling.

## DISCUSSION

Appellee contends that the circuit court was correct in its ruling that a State employee who sustains an occupational disease arising out of his or her employment is entitled to work-related accident leave pursuant to State Pers. & Pens. § 9–701(a). Appellee agrees with the findings of fact of the ALJ but asks us to reverse his legal conclusion and affirm the circuit court. We review an administrative agency's decision under the same standard as the circuit court reviewed it.

Our primary goal is to determine whether the agency's decision is " 'in accordance with the law or whether it is arbitrary, illegal, and capricious.' " *Curry v. Department of Public Safety and Correctional Servs.*, 102 Md.App. 620, 626–27, 651 A.2d 390, (1994), *cert. granted*, 338 Md. 252, 657 A.2d 1182 (1995), *cert. dismissed*, 340 Md. 175, 665 A.2d 1038, (1995) (quoting *Moseman v. County Council of Prince George's County*, 99 Md.App. 258, 262, 636 A.2d 499, (1994)). The agency's fact-finding and application of the law to the facts will be upheld, as long as it is supported by substantial evidence. *Id.* at 627, 651 A.2d 390. Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion....' " *Anderson v. Department of Public Safety and Correctional Servs.*, 330 Md. 187, 213, 623 A.2d 198, (1993) (quoting *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512, 390 A.2d 1119,(1978)). The proper approach for determining whether there is substantial evidence is if a reasoning mind could reasonably have come to the factual conclusion that the agency reached. *Id.* When deciding issues of law, however, our review is expansive, and we may substitute our judgment for that of the agency if there are erroneous conclusions of law. *Curry*, 102 Md.App. at 627, 651 A.2d 390.

*Gigeous v. Eastern Correctional Institution,* 132 Md.App. 487, 494, 752 A.2d 1238 (2000).

Because appellee only asks us to reverse the agency's decision based on its erroneous conclusions of law, we limit our review to the statutory construction of State Pers. & Pens. § 9–701, which provides:

(a) *In general.*—Each employee in the State personnel Management System, except a temporary employee, is entitled to work-related accident leave with sick pay if:

(1) the employee sustains a disabling personal injury that would be compensable under the Maryland Workers' Compensation Act; and

(2) a physician examines the employee and certifies that the employee is disabled because of the injury.

(b) *Right to file Workers' Compensation Claim.*—The appointing authority of an employee entitled to work-related accident leave shall notify the employee of the employee's right to file a claim with the Workers' Compensation Commission.

Appellee maintains that the phrase "disabling personal injury," within subsection (a)(1), encompasses occupational diseases such as Carpal Tunnel Syndrome and, therefore, she is entitled to work-related accident leave.

Appellant, on the other hand, contends that the circuit court erred in determining that State Pers. & Pens. § 9–701 allows State employees to use work-related accident leave for occupational diseases. Appellant avers that the court's finding is contrary to the plain language of the statute, arguing that if the legislature intended to expand the accident leave statute to cover occupational diseases it would have provided for such, expressly, in the text of the statute.

It is well settled that when the meaning of a statute is at issue, the court's inquiry begins with the words of the statute and, ordinarily, also ends there. *Tidewater/Havre de Grace, Inc. v. Mayor and City Council of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468 (1995) (citations omitted). If the

words of the statute are clear and free from ambiguity, we need not look further; there ordinarily is no need to look beyond the words of the statute to determine its meaning or scope. *Id.* at 345, 653 A.2d 468. In other words, we "are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." *Id.* (quoting *Potter v. Bethesda Fire Dep't, Inc.,* 309 Md. 347, 353, 524 A.2d 61 (1987)).

■ State Pers. & Pens. § 9–701 is clear and unambiguous. By its plain language, the statute entitles a State employee to work-related accident leave if the employee satisfies two conditions: (1) he or she sustains a disabling personal injury that would be compensable under the Maryland Workers' Compensation Act and (2) a physician examines the employee and certifies that he or she is disabled because of the injury. In the case *sub judice,* the Commission found that appellee sustained an "occupational disease arising out of and in the course of employment, and the first date of disablement was November 5, 1995," and ordered MDE to pay for her medical expenses. There is evidence in the record to indicate that appellee had been examined by a physician; moreover, she had an operation for her injury and these facts presumably were part of the Commission's determination. Thus, both parties ask this Court to divine the legislature's intent when it employed the phrase, "disabling personal injury." Before we attempt to construe the meaning of the statutory language of State Pers. & Pens. § 9–701(a)(1), we shall revisit the ALJ's findings of fact, as agreed upon by both parties, as the findings, in conjunction with the time frame of appellee's disability, will direct our final resolution of this case.

Neither appellee nor appellant, however, has directed our attention to the law that was in effect when appellee sustained her disabling condition, nor did the circuit court in its memorandum opinion. We note, however, as did the administrative law judge, that the issue of when appellee's disablement began, in conjunction with the controlling law in effect, is

critical to our disposition of this appeal. The following find-
ings of facts by the ALJ are determinative of our decision:

> The regulatory provision governing accident leave, which
> was in effect during the period the [appellee] used the 238.5
> hours of annual/sick leave and compensatory time (June 19,
> 1996 to November 18, 1997), and during the period her
> request to convert said leave and compensatory time to
> accident leave was considered and denied (November 20,
> 1997 to January 30, 1998) was COMAR 06.01.11.09 which in
> pertinent part states:
>
>> Accident leave is leave with two-thirds of regular pay that
>> is granted to an employee who, in the actual performance
>> of the employee's job duties, sustains an injury, which is
>> determined to be compensable according to the Maryland
>> Workers' Compensation Law ... Injury is an accidental
>> personal injury occurring during the performance of an
>> employee's actual job duties. *Injury does not include
>> occupational diseases.* COMAR 06.01.11.09 A & B (re-
>> pealed March 2, 1998, Maryland Register Vol. 26, Issue 6,
>> March 13, 1998) (emphasis added).
>
> The regulations governing accident leave, which were
> adopted on March 2, 1998, are now found at COMAR
> 17.04.11.01 to .28. The current provision specifically per-
> taining to accident leave states that "[e]ligibility for work-
> related accident leave is governed by State Personnel and
> Pension Article, Title 9, Subtitle 7, Annotated Code of
> Maryland." [*see* ] COMAR 17.04.11.07.

The ALJ found unpersuasive appellee's assertion that CO-
MAR 06.01.11.09 A & B had no legal effect during the period
of appellee's disablement (beginning November 5, 1995)
through the date the agency denied her request for accident
leave (January 30, 1998) because those regulatory provisions
conflicted with State Pers. & Pens. § 9–701. As the ALJ
observed, prior to 1997, the statutory provision of State Pers.
& Pens. § 9–701 (formerly § 7–602) read as follows:

*Work-related accident leave authorized.*

Each employee subject to this subtitle is entitled to work-related accident leave with sick pay if:

(1) the employee sustains an accidental personal injury in the actual performance of the employee's job duties:

(2) the injury would be compensable under the Maryland Workers' Compensation Act; and

(3) a physician examines the employee and certifies that the employee is disabled because of the injury.

■ Although it is clear that the term "disabling personal injury" replaced the former "accidental personal injury," the ALJ correctly articulated that State Pers. & Pens. § 9–701 did not become effective until the first full pay period in calendar year 1997. Appellee, therefore, would not be entitled to "work-related accident leave" until the amended statute came into effect—after the first full pay period of 1997. Regardless of our determination of the statutory meaning of the phrase "disabling personal injury" within State Pers. & Pens. § 9–701(a)(1), we hold that, from November 5, 1995 to the beginning of 1997, the governing regulation of appellee's injury was COMAR 06.01.11.09 A & B (repealed March 2, 1998). Additionally, because COMAR expressly stated that "[i]njury does not include occupational diseases," appellee is precluded from converting annual/sick leave to work-related accident leave for that period of time. This conclusion does not end our discussion; we now proceed to appellant's and appellee's arguments regarding the statutory construction of "disabling personal injury."

■ As we stated above, there ordinarily is no need to look beyond the words of the statute to determine its meaning or scope. Nevertheless, in the interest of completeness, we may look at the purpose of the statute and compare the result obtained with the plain language of the statute. *See generally, Tidewater/Havre de Grace*, 337 Md. at 345, 653 A.2d 468. The stated purpose of State Pers. & Pens. § 9–701 can be found in the preamble of House Bill 168, passed by the General Assembly in 1995.[1]

---

1. We note that House Bill 168 repealed and reenacted, with amendments, §§ 7–602, 7–603, and as noted previously in our discussion, § 7–

AN ACT concerning

**State Personnel—Accident Leave**

FOR the purpose of clarifying the circumstances in which an employee is entitled to work-related accident leave with sick pay;

. . .

Additionally, Delegate Joan Cadden's testimony in support of HB 168 is instructive:

> This legislation removes the requirement that the injuries be in the actual performance of job duties while keeping the requirement that the injury must be considered compensable under worker[s]' comp.

> As an example, if a parole and probation employee was walking through their [sic] office on the way to a meeting with their [sic] supervisor and was attacked by a parolee and injured, he or she would be allowed accident leave for time lost. However, if that same employee was attacked on the way to the restroom, he or she would not. In both cases, the hazards of the job brought about the injury, but only one instance resulted in accident leave. This bill would correct that technicality.

Appellee directs our attention to the fact that the legislation which proposed the change to State Pers. & Pen. § 7–602 (now § 9–701) in its original form did not contain the phrase "disabling personal injury" in it. Rather, the legislation's focus was the removal of the requirement that an employee must be injured in the actual performance of the employee's job duties in order to qualify for leave time. It was not until the bill went to the House Appropriations Committee that the word "disabling" replaced "accidental" when that committee amended the bill.

Appellee would have us expand the meaning of State Pers. & Pens. § 9–701 to include occupational diseases, arguing that

---

602 was renumbered in 1996, 1996 Laws of Maryland, Ch. 347, to become § 9–701.

the legislative history of the 1995 amendment supports the conclusion that the purpose in changing the language of the [statute] from accidental personal injury to disabling personal injury was to eliminate the prior [ ] preclusion of injuries which were compensable under the Workers' Compensation Act, but were not accidental personal injuries.

We disagree.

Our basis for disagreement lies in the decision of the Court of Appeals in *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 148, 634 A.2d 28 (1993), wherein the Court stated that we must read the words of the statute in the context in which the statute appears, which may include examining related statutes, especially if they are part of a statutory scheme. In this regard, we note that work-related accident leave is not the only leave available to State employees under Title 9 of the State Personnel & Pensions Article. While work-related accident leave is limited to personal injuries, the sick leave statute, found at State Pers. & Pens. § 9–501(b)(1), provides for illness or disability of an employee.

§ 9–501. Sick leave authorized

(a) In general.—Each employee in the State Personnel Management System, except a temporary employee, is entitled to sick leave with pay as provided in this subtitle.

(b) Uses for leave.—Sick leave may be used:

(1) for illness or disability of the employee;

(2) for death, illness, or disability of a member of the employee's immediate family;

(3) following the birth of the employee's child;

(4) when a child is placed with the employee for adoption; or

(5) for a medical appointment of the employee or a member of the employee's immediate family.

Giving effect to the controlling statutory scheme, we hold that the work-related accident leave and sick leave provision should be read in tandem to the extent possible. When read within the statutory framework, it is evident that Title 9

addresses two distinct conditions: (1) accidental injuries and (2) occupational diseases. We have stated before that an occupational disease is an ailment, disorder, or illness which is "ordinarily slow and insidious in its approach," *LeCompte v. UPS, Inc.,* 90 Md.App. 651, 654, 602 A.2d 261 (1992), whereas "accident" is something that can occur suddenly and is sometimes associated with the elements of force, violence, and surprise. *See Foble v. Knefely,* 176 Md. 474, 486, 6 A.2d 48 (1939). It is therefore clear that the legislature intended that two different types of leave be available to State employees, depending upon whether an employee suffers from an accident at work or an occupational disease.

We interpret State Pers. & Pens. § 9–701 in accord with its purpose, i.e., the removal of the requirement that an employee's disabling injury be incurred in the actual performance of job duties, rather than expanding the meaning of "work-related accident" or, in the language of the current statute, "disabling personal injury," to include occupational diseases. In light of our interpretation, we hold that the trial court erred in concluding that State Pers. & Pens. § 9–701(a)(1) permits State employees who are afflicted with an occupational disease to use work-related accident leave. Therefore, in our review of the administrative proceedings in the same manner as did the trial judge, we affirm the findings of fact and legal conclusions of the ALJ and reverse the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**