818 A.2d 250

**Claretta RIDEOUT**

v.

**DEPARTMENT OF PUBLIC SAFETY
& CORRECTIONAL SERVICES.**

No. 2584, Sept. Term, 2001.

Court of Special Appeals of Maryland.

March 3, 2003.

Linda D. McKeegan (Keith J. Zimmerman and Kahn, Smith & Collins, P.A., on the brief), Baltimore, for appellant.

Karl A. Pothier, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, KENNEY, JOHN F. McAULIFFE, (Ret'd, specially assigned), JJ.

KENNEY, Judge.

Claretta Rideout, appellant/cross-appellee ("Rideout"), and the Department of Public Safety & Correctional Services, appellee/cross-appellant (the "Department"), appeal from a judgment of the Circuit Court for Baltimore City affirming the ruling of an administrative law judge ("ALJ") of the Office of Administrative Hearings ("OAH").[1] In that ruling, the ALJ determined that the Department incorrectly denied a request by Rideout for work-related accident leave pursuant to Md. Code (1993, 1997 Repl.Vol.), § 9–701 of the State Personnel & Pensions Article ("SP & P"), but that Rideout had waived any right to "other benefits" under SP & P § 9–704(c) by receiving temporary total disability benefits under the Maryland Work-

---

1. The State Personnel and Pensions Article provides a three-step process for grievance proceedings between an employee and an employer. First, an employee must file a written grievance with the appointing authority. SP & P § 12–203(a). Next, if the grievance is denied, an employee may appeal "to the head of the grievant's principal unit or designee." SP & P § 12–204(a)(1). Finally, an employee may appeal a denial by the "principal unit or designee" to the Secretary of Budget and Management (the "Secretary"). SP & P § 12–205(a). At that point, the Secretary may refer the grievance to the OAH for resolution. SP & P § 12–205(b)(2)(ii). A decision by the OAH is "the final administrative decision." SP & P § 12–205(c)(2)(ii).

ers' Compensation Act. On appeal, the parties present three questions, which we have reworded and consolidated as follows:

1. Did the ALJ err, as a matter of law, in finding that the Department incorrectly denied appellant's request for work-related accident leave?

2. Did the ALJ err, as a matter of law, in concluding that appellant waived any right to "other benefits," under SP & P § 9–704(c), by receiving temporary total disability benefits under the Maryland Workers' Compensation Act?

We answer "no" to the first question and "yes" to the second. We shall remand the case to determine the length of time Rideout is entitled to receive "other benefits" under SP & P § 9–704(c).

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Rideout injured her left shoulder in a work-related accident and did not return to the Maryland House of Correction–Annex in Jessup, where she worked as a Correctional Officer II, until September 20, 1999.[2] The following day, she "was sent to the firing range to qualify with the 12–gauge shotgun." In order to qualify, she had to fire twenty "rounds." After firing two rounds, the shotgun "jumped out— slipped out of the socket, . . . hit me on the right side of my cheek, down on the right side of my neck area, shoulders, and down to my forearms."[3] She reported the incident to a sergeant at the range, and then continued firing the shotgun, which "slipped . . . two or three more times." After qualifying, Rideout reported her injuries to Sergeant Spencer, who "was the sergeant from [her] agency." She was then "sent home for that day."

---

2. The Maryland House of Correction–Annex is a division of the Department.

3. The socket is the area between a person's arm and chest.

Rideout went to work on September 22 and reported her injuries to Lieutenant Dorn and Captain Smith. Because of a "shortage of personnel" that day, she could not leave work to seek medical treatment. She returned to work the next day and again met with Captain Smith. She provided a written report relating to her injuries and then the two met with Assistant Warden William Smith. According to Rideout, "they did not like the report that I had written. That I had to rewrite the report and then, and only then, [could I get medical treatment]. I rewrote the report and I did it under distress[.]"

Afterwards, she was sent to Concentra, a medical services provider to which the "Maryland House of Correction–Annex sends all the officers ... when they have a job related injury." There, she was examined by Colleen Vogele, a physician assistant working under the supervision of Dr. Roger Mehl pursuant to a delegation agreement. Vogele diagnosed the injuries as contusions to the right shoulder and upper arm and determined that Rideout could return to "regular duty on 9/23/99" because

> [s]he had no functional deficit during [the] exam, she had full range of motion of both extremities. Actually, upper and lower. No complaints of pain throughout the examination. The only physical finding on exam was a large bruise on the right upper bicep area, looking like from the butt of a rifle.

She also recommended that Rideout's orthopedic surgeon, Dr. Raymond Drapkin, determine any work restrictions resulting from the prior injury to her left shoulder. Although Dr. Mehl "signed off at the end of the day ... [on Rideout's] chart," he did not examine her. Thereafter, the Department did not have its own physician examine Rideout.

On September 24, Dr. Drapkin examined Rideout and determined that she could not work because of injuries to her right side. Rideout stated that "[Drapkin] believed that I had a tear, so he scheduled an MRI. He did x-rays of the upper right side face, neck and shoulder, and upper inner forearm.

And then he referred me to off work status." At the hearing, Rideout was still on "off work" status.

As a result of Dr. Drapkin's diagnosis, Rideout requested work-related accident leave from the Department. According to Rideout, she telephoned several persons at the Department, over a three month period, to inquire about that request but did not learn until December that it had been denied by Assistant Warden Smith. She then filed a grievance disputing that denial and, after two hearings before the Department, was denied again. She then appealed the Department's denial to the OAH.

In the meantime, Rideout filed a claim with the Workers' Compensation Commission (the "Commission") because she was not "[getting] any pay." On March 13, 2000, the Commission determined that she had suffered a disability to her right shoulder and neck from an accidental personal injury arising out of and in the course of employment. It awarded her compensation for temporary total disability ("TTD") from September 22, 1999, to the present, as well as continuing medical expenses and attorney's fees.

Rideout's appeal to the OAH was heard by an ALJ on May 31 and June 20, 2001. She argued that the Department incorrectly denied her request for accident leave pursuant to SP & P § 9–701(a). Addressing subsection (a)(1), she contended that the Commission's award of TTD established that she sustained "a disabling personal injury that [was] compensable under the Maryland Workers' Compensation Act." As to subsection (a)(2), she maintained that Dr. Drapkin examined her and certified that she was "disabled because of the injury." Rideout indicated that she was not seeking payment for accident leave pursuant to SP & P § 9–704(a) but, instead, was seeking "other benefits" as set forth in SP & P § 9–704(c)(1) & (2).

The Department, relying upon SP & P § 9–702(a)(2)(i), contended that the accident leave ended on September 23, 1999, because Dr. Mehl "signed off" on Vogele's determination that Rideout could return to work on that day. In support, it

relied upon two declaratory rulings issued by the Department's Secretary of Personnel, one in 1984 (the "1984 ruling") and the other in 1995 (the "1995 ruling"). The 1984 ruling provided that the agency's physician, not the employee's, determines the date upon which accident leave ends. The 1995 ruling was that accident leave ended on the date certified by a physician, not the date determined by the Commission.

The ALJ issued a written decision on August 8, 2001, concluding as a "matter of law" that

[the Department's] initial denial of accident leave constituted a misinterpretation or misapplication of a policy or regulation over which [the Department] had control. Nevertheless, once [Rideout] accepted the Commission's retroactive award of temporary total disability benefits, she waived any entitlement to accident leave for the same period [of] time, along with any leave accumulation or retirement credits she would have obtained incident to the award of accident leave.

In so concluding, the ALJ noted that the Department could not rely upon a diagnosis by a physician assistant, even if it was "signed off" by a physician, because SP & P § 9–701(a)(2) required that a physician examine Rideout. The ALJ found the 1984 ruling inapposite because the question addressed by the Department concerned employees who were examined by physicians, not physician assistants. Relying on the 1995 ruling, however, the ALJ stated that the Commissioner's award of TTD did not establish Rideout's "entitlement to accident leave" under SP & P 9–701(a)(1), but rather, a "physician's certification . . . [was] controlling." Finally, the ALJ found that SP & P § 9–704(d) precluded Rideout from receiving both TTD benefits and accident leave and, therefore, "once [Rideout] accepted and collected the TTD award, she waived any right thereafter to recover accident leave for the same period of time."

Rideout sought judicial review of that decision in the Circuit Court for Baltimore City. After a hearing on January 18, 2001,

the circuit court affirmed the ALJ's decision. This timely appeal followed.

## STANDARD OF REVIEW

We review the decision of an administrative agency to determine if it is " 'in accordance with the law or whether it is arbitrary, illegal, and capricious.' " *Maryland Dep't of the Env't v. Ives,* 136 Md.App. 581, 585, 766 A.2d 657, *cert. denied,* 364 Md. 462, 773 A.2d 514 (2001) (quoting *Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499 (1994)). We are " 'limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999) (quoting *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994)). In applying the substantial evidence test, we must decide " ' "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." ' " *Banks,* 354 Md. at 68, 729 A.2d 376 (quoting *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978)). When reviewing the agency's legal conclusions, "we may substitute our judgment for that of the agency if there are erroneous conclusions of law." *Ives,* 136 Md.App. at 585, 766 A.2d 657.

## DISCUSSION

### I.

The Department argues that the ALJ erred, as a matter of law, in finding that it could not rely upon the diagnosis of a physician assistant ("assistant") in denying Rideout's request for work-related accident leave ("accident leave"). Essentially, the Department contends that "physician," as used in SP & P § 9–701(a)(2), should be read in conjunction with Md.Code (1981, 2000 Repl.Vol., 2002 Supp.), §§ 14–101 *et seq.* and 15–101 *et seq.* of the Health Occupation Article ("Health"). It

maintains that, because an assistant "is an agent of the supervising physician in the performance of all practice-related activities," SP & P § 9–701(a)(2) "must be interpreted to mean that the examination required therein may be performed" by an assistant. It also argues that the 1984 ruling controls, because "any conflict between the State's physician and an employee's personal physician may properly be resolved in favor of the State's physician."

When we interpret a statute, our "inquiry begins with the words of the statute and, ordinarily, also ends there." *Ives*, 136 Md.App. at 586, 766 A.2d 657. "If the words of the statute are clear and free from ambiguity, we need not look further." *Ives*, 136 Md.App. at 586–87, 766 A.2d 657. In *Ives*, we found that SP & P § 9–701-(a)(1) did not permit State employees to use accident leave for treatment of an occupational disease. In so finding, we noted that the plain language of SP & P § 9–701 was "clear and unambiguous," but, "in the interest of completeness," we examined the purpose of that statute to ascertain the meaning of the phrase "disabling personal injury." *Ives*, 136 Md.App. at 589, 766 A.2d 657.

Here, the plain language of SP & P § 9–701(a)(2) is clear and unambiguous. It provides that an employee is entitled to accident leave if "a *physician* examines the employee and certifies that the employee is disabled because of the injury." (Emphasis added). Thus, a physician, not an assistant, must examine an employee.

We are not persuaded that SP & P § 9–701(a)(2) must be read in conjunction with Health §§ 14–101 *et seq.* and 15–101 *et seq.* Even if it were, however, an examination by an assistant would not satisfy the requirements of (a)(2) because an assistant is not a physician, but rather, "an individual who is certified under this title to perform delegated medical acts under the supervision of a physician." Health § 15–101(m). In the Health Article, an assistant is not included in any definition for physician. For example, in § 1–101(i), a physician "means, except in Title 14 of this article, an individual who is authorized by a law of this State to practice medicine in

this State." § 14–101(j) defines physician as "an individual who practices medicine." And, a "licensed physician" is a "physician ... who is licensed by the Board to practice medicine." § 14–101(g). Although, pursuant to a delegation agreement, a physician may delegate certain medical acts such as taking patient histories, reviewing patient records, and performing physical examinations, Health § 15–301(c), the delegated performance of such acts by an assistant does not negate the plain language of SP & P § 9–701(a)(2) that a physician examine an employee and certify that the employee is disabled as a result of the injury.

The 1984 ruling is also unpersuasive because it provides that the agency's physician, not the employee's, determines the date upon which accident leave ends. Again, it is a physician, not an assistant, who makes that determination. Thus, we conclude that the ALJ did not err, as a matter of law, in finding that the Department could not rely upon the diagnosis of an assistant to deny Rideout's request for accident leave.

## II.

Rideout argues that the ALJ erred, as a matter of law, in concluding that she waived any right to "other benefits," under SP & P § 9–704(c), by receiving TTD benefits under the Maryland Workers' Compensation Act. In support, she contends there was no waiver because the "record is replete with testimony ... evidencing her continued efforts to secure work-related accident leave together with her incidental benefits." She also maintains that while SP & P 9–704(d) does not allow an employee to "collect both sick pay and workers' compensation," it does not preclude an employee, who is receiving TTD benefits, from "continuing leave accruals and health benefits." The Department contends that Rideout would collect a "double recovery as a result of the same injury" if permitted to receive TTD benefits and accident leave.

In *Correctional Pre–Release System v. Whittington,* 119
Md.App. 436, 443, 705 A.2d 78 (1998), we held that SP & P
§ 9–704(d) precluded a "State employee who receives accident
leave . . . from receiving [TTD] while receiving such accident
leave." In *Whittington,* the employee had been awarded
accident leave and was accruing "leave and retirement credit
as a full-time state employee." *Whittington,* 119 Md.App. at
439, 705 A.2d 78. Relying on Md.Code (1991), § 9–610 of the
Labor & Employment Article ("Labor"), Whittington argued
that, because his "net" accident leave payment was lower than
the payment he would have received from the Commission, he
was entitled to the difference between those benefits. In that
context, we held that the plain language of SP & P § 9–704(d)
governed and that Whittington could not receive TTD bene-
fits. We did not address whether SP & P § 9–704(d) preclud-
ed an employee, who was receiving TTD benefits, from receiv-
ing "other benefits."

■■■ Because Rideout only asks us to reverse the Depart-
ment's decision based on an erroneous conclusion of law, we
limit our review to the statutory construction of SP & P § 9–
704. As the Court of Appeals reiterated in *Dyer v. Otis
Warren Real Estate Co.,* 371 Md. 576, 581, 810 A.2d 938 (2002)
(quoting *Mayor & City Council of Baltimore et al. v. Chase et
al.,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000) (quoting
*Chesapeake and Potomac Telephone Co. of Maryland v. Di-
rector of Finance for Mayor and City Council of Baltimore,*
343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996))):

"'[W]e begin our analysis by reviewing the pertinent rules
[of statutory construction]. Of course, the cardinal rule is
to ascertain and effectuate legislative intent. To this end,
we begin our inquiry with the words of the statute and,
ordinarily, when the words of the statute are clear and
unambiguous, according to their commonly understood
meaning, we end our inquiry there also.

Where the statutory language is plain and unambiguous,
a court may neither add nor delete language so as to
"reflect an intent not evidenced in that language," nor may

it construe the statute with " 'forced or subtle interpretations' that limit or extend its application." Moreover, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " [Internal citations omitted; alteration in *Chase*].

### a. § 9–704 of the SP & P Article

Section 9–704 provides:

(a) *Basis of pay.*—Payment to an employee for work-related accident leave taken under this subtitle shall be based on two-thirds of the employee's regular pay.

(b) *As separate benefit.*—Payment for work-related accident leave taken under this subtitle constitutes a separate benefit on account of accidental disability and is not a continuation of salary.

(c) *Other benefits.*—Notwithstanding the reduced rate that an employee is paid while using work-related accident leave, the employee:

(1) continues seniority and leave accruals based on the employee's regular pay; and

(2) does not lose health care benefits with the subsidy allowed in Title 2, Subtitle 6 of this article solely because of use of the work-related accident leave.

(d) *Effect of receiving payment.*—An employee may not receive temporary total disability benefits under the Maryland Workers' Compensation Act while the employee is receiving payment under this subtitle.

### b. Legislative history

Initially, only firemen and state policemen could receive accident leave. 1975 Maryland Laws, Ch. 829; 1977 Maryland Laws, Ch. 391. By Chapter 800 of the 1978 Laws of Maryland, which was codified at Md.Code (1957, 1972 Repl.Vol., 1978 Supp.), Article 64A, § 37(g), accident leave was extended to all state employees. Section 37(g)(1) awarded accident leave with full pay to an employee who, "in the actual performance of his job duties," sustained an accidental personal

injury that "would be compensable under the Maryland Workers' Compensation Law." 1978 Maryland Laws, Ch. 800 at 2337. Section 37(g)(2) provided that an employee could receive accident leave for "one year from the injury date." 1978 Maryland Laws, Ch. 800 at 2337. Section 37(g)(3) precluded an employee from receiving temporary total benefits "under Workmen's Compensation while receiving full pay under this section." 1978 Maryland Laws, Ch. 800 at 2337.

As part of a code revision in 1993, the General Assembly added a new article, SP & P, to the Annotated Code of Maryland, which repealed Art. 64A and recodified § 37(g) at SP & P § 7–601 *et seq.* 1993 Maryland Laws, Ch. 10, § 2 at 609–10, 751–54. Those sections contained "new language derived without substantive change" from former Art. 64A, § 37(g). 1993 Maryland Laws, Ch. 10, § 2 at 751–54.

In separate legislation that same year, SP & P § 7–605 was repealed and reenacted, with amendments, in order to "alter[] the amount of pay that an employee may receive while on work-related accident leave" and to "clarify[] that employees receiving work-related accident leave continue certain benefits." 1993 Maryland Laws, Ch. 616 at 3028. Section 7–605(a) provided that payment for accident leave was "based on two-thirds of the employee's regular pay." 1993 Maryland Laws, Ch. 616 at 3030. In § 7–605(c), the General Assembly provided that "an employee receiving work-related accident leave shall continue to accrue leave, seniority, and health care benefits." 1993 Maryland Laws, Ch. 616 at 3030.

In 1994, SP & P § 7–605(c) was repealed and reenacted, with amendments, for the purpose of "clarifying the existing practices for the continuation of certain employee benefits during work-related accident leave." 1994 Maryland Laws, Ch. 471, § 3 at 2255. That section provided:

(c) Notwithstanding the reduced rate that an employee is paid while using work-related accident leave, the employee:

   (1) continues seniority and leave accruals based on the employee's regular pay; and

(2) does not lose health care benefits ... solely because of use of the work-related accident leave.

The following year, the General Assembly repealed and reenacted, with amendments, SP & P §§ 7–602 and 7–603 to "clarify[] the circumstances in which an employee is entitled to work-related accident leave with sick pay." 1995 Maryland Laws, Ch. 540 at 3139. Section 7–602(a)(1) provided that an employee who sustained a disabling personal injury in the course of employment was entitled to accident leave. 1995 Maryland Laws, Ch. 540 at 3140. § 7–603(a)(2)(ii) changed the amount of time that an employee could remain on accident leave from one year to six months. Finally, § 7–603(c) provided that accident leave could "be granted for up to an additional six months" if certain conditions were satisfied. 1995 Maryland Laws, Ch. 540 at 3140.

Finally, in 1996, the legislature repealed SP & P §§ 7–602 through 7–606 and reenacted those sections, with amendments, at SP & P §§ 9–701 through 9–705. Those amendments are not relevant to our discussion.

### c. § 9–610 of the Labor Article

■■■ Although we determined in *Whittington* that the plain language of SP & P § 9–704(d) precluded an employee from receiving additional TTD benefits under Labor § 9–610, the rationale used to determine whether workers' compensation benefits may be offset against other benefits is instructive. Labor § 9–610 provides, in pertinent part:

(a)(1) If a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit ..., payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer ... for payment of similar benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer ... shall provide an additional benefit that equals

the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

The purpose of that section "was to allow the Workers' Compensation Commission to prevent an employee from receiving a double recovery for the same injury." *Whittington*, 119 Md.App. at 441, 705 A.2d 78; *see State Retirement & Pension System of Maryland v. Thompson*, 368 Md. 53, 70, 792 A.2d 277 (2002); *Fikar v. Montgomery County*, 333 Md. 430, 435, 635 A.2d 977 (1994); *Frank v. Baltimore County*, 284 Md. 655, 659, 399 A.2d 250 (1979). It accomplished its purpose by providing an offset of workers' compensation benefits against the benefits provided by an employer, so long as the benefits were "similar." *Fikar*, 333 Md. at 435, 635 A.2d 977; *see Newman v. Subsequent Injury Fund*, 311 Md. 721, 724, 537 A.2d 274 (1988).

In *Frank*, the employee retired from the Baltimore County Police Department because of a work-related injury and received disability pension benefits from his employer. Subsequently, the Commission awarded him compensation for a permanent partial disability, but determined that the "obligation had been fully discharged ... because the pension benefits that were provided by Baltimore County were 'equal to or better than any benefit' ... under the workmen's compensation statute." *Frank*, 284 Md. at 658, 399 A.2d 250. The Court of Appeals agreed, holding that workers' compensation benefits could be offset against disability pension benefits because the two were similar in that both were payments made as a result of a disability.

In contrast, an employer may not offset workers' compensation benefits against "ordinary" retirement benefits because the benefits are not similar. *Newman*, 311 Md. at 728, 537 A.2d 274; *see Blevins & Wills v. Baltimore County*, 352 Md. 620, 644, 724 A.2d 22 (1999) (stating that the employer "is not entitled to set off Wills's retirement benefits against her workers' compensation benefits"). In *Newman*, the Commission awarded Newman permanent partial disability compensation and, thereafter, Newman retired and began receiving

benefits under "the county pension plan." *Newman,* 311 Md. at 723, 537 A.2d 274. The Court of Appeals held that Newman's employer was not entitled to an offset because

> [she] was awarded workmen's compensation because of the impairment of the industrial use of her body as a result of her work-related injury. On the other hand, it appears that she was entitled to the benefits under the retirement plan merely because she had elected to retire after attaining a prescribed age and 20 years service with the county. The payment of these benefits had no relation whatsoever to her injury and the disability resulting therefrom ... In short, her retirement payments were an age and length of service benefit; her workmen's compensation award was a disability benefit. The two benefits were not similar and not comparable. Therefore, the offset provisions ... were not applicable.

*Newman,* 311 Md. at 724, 537 A.2d 274.

### d. Conclusion

When an employee receives TTD benefits, he or she receives two-thirds of his or her average weekly wage. Labor § 9–621(a)(1). Likewise, payment to a state employee for accident leave is based upon two-thirds of his regular pay. SP & P § 9–704(a). The payment benefits are similar because they compensate an employee for a personal injury sustained in the course of employment. Thus, to prevent an employee from recovering twice for the same injury, SP & P § 9–704(d) precludes the receipt of TTD benefits while receiving payment for accident leave.

There is no language in SP & P § 9–704, however, that prevents an employee who receives TTD benefits from also receiving "other benefits" under SP & P § 9–704(c). Indeed, SP & P § 9–704(d) provides that an employee may not receive TTD benefits while receiving *payment* for accident leave. In SP & P § 9–704(c), "payment" refers to compensation based upon two-thirds of an employee's regular pay, not the continuation of "other benefits."

Moreover, "other benefits" do not arise as a result of an employee's injury. In the absence of an injury, the employee would receive those benefits as an incident of employment. In 1993, SP & P § 7–605(c) was enacted to "clarify[] that employees receiving work-related accident leave continue certain benefits" such as leave, seniority, and health care benefits. The following year, SP & P § 7–605(c) was reenacted, again, to "clarify[] the existing practices for the continuation of certain employee benefits during work-related accident leave."

We conclude that SP & P § 9–704(d) does not preclude an employee who receives TTD benefits from receiving "other benefits" under SP & P § 9–704(c). In receiving such benefits, the employee does not recover twice for the same injury. Rather, the employee is assured those benefits to which he or she would have been entitled, in the absence of the work-related injury. In light of that conclusion, we reverse the legal conclusion of the ALJ with respect to this issue, and remand the case to determine the length of time Rideout is entitled to receive "other benefits" under SP & P § 9–704(c).

**JUDGMENT AFFIRMED WITH RESPECT TO QUESTION ONE. JUDGMENT REVERSED WITH RESPECT TO QUESTION TWO AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND TO THE OAH FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE DEPARTMENT.**