## WILLIAM H. SURRATT *v.* CHESAPEAKE & POTO-MAC TELEPHONE COMPANY.

[No. 96, October Term, 1928.]

*Decided January 31st, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*William H. Surratt* and *Paul R. Hassencamp,* for the appellant.

*Charles H. Carter* and *William L. Marbury,* with whom were *Dozier A. Devane, Bernard Carter & Sons,* and *Marbury, Gosnell & Williams,* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The single question in this case is whether the allegation in the bill of complaint that an account rendered by a telephone company "is inaccurate and grossly excessive," together with an offer to pay the amount admitted to be due or to adjust the account "and to pay such sum of money as would reasonably and fairly represent the proper charges for the services rendered by the defendant," is sufficient to support a bill for an injunction to restrain defendant from discontinuing telephone service for the refusal of plaintiff to pay the bill.

The plaintiff is a practicing attorney and the defendant is the Chesapeake and Potomac Telephone Company of Baltimore City.

The chancellor sustained the demurrer to the third amended bill of complaint and dismissed the bill, and this appeal is from that decree. Demurrers to the original bill and the earlier amended bills had previously been sustained.

The bill now under consideration alleges that for many years plaintiff has been a subscriber to the service furnished by defendant; that, for a long time prior to the filing of this bill, there existed between plaintiff and defendant contention as to the accuracy of accounts rendered by defendant, and that the present account is inaccurate and grossly excessive, "the said account as rendered being in the sum of $77.89 (a copy of said account being attached hereto and made a part hereof), $7.45 of which account he admits, being and comprising the following four items: May, 1927, $2.10; June, 1927, $2.50; July, 1927, $1.25; August, 1927, $1.60, and the balance of $70.44 he disputes; and which account your orator has refused to pay (though he hereby tenders himself as ready, willing and able to adjust said account with the defendant and to pay such sum of money as would reasonably and fairly represent the proper charges for the services rendered by the defendant)"; that defendant has notified plaintiff that, unless the disputed account is paid without deduction, telephone service in plaintiff's offices will be discontinued on a date named; that the discontinuance of such service would work an irreparable injury to plaintiff's practice, and that he is without remedy save in a court of equity. The prayer of the bill is for an injunction and for further relief.

With the bill was filed an account rendered by defendant, covering a period of eight months beginning January 1st, 1927, a balance of $115.74 having been brought forward from the previous year. The account contains a statement for each month and the items for each month are: telephone service for the month, additional local messages for the previous month, toll service for the previous month and balance

due on bill rendered. In addition there are credits in four of the months of cash payments. Credits of May 5th, 1927, and June 29th, 1927, appear to settle the account up to May 1st, except for additional local messages and toll service for April, which are included in the May statement. It is not charged that plaintiff has not been given credit for all payments made by him. It, therefore, appears that included in the amount disputed by plaintiff are the regular monthly service charges for May, June, July and August, which are the same in each of those months as in the previous months for which settlement appears to have been made. Certainly the court was entitled to be informed why such items as these at least were disputed. Apparently all the "additional local messages" are questioned. But it is not explained whether that is because there were no such messages, or not so many, or because defendant was not entitled to make an extra charge for them or charged too much. And in this connection, there is not a word in the bill as to what was the contract between plaintiff and defendant. If the tender in the bill of willingness "to adjust said account with the defendant and to pay such sums of money as would reasonably and fairly represent the proper charges for the service rendered by the defendant" is to be taken as an admission that part of the disputed balance is due, there is a failure to state what part is due, and why the remaining part is not due; or in what respect the account "is inaccurate and grossly excessive" as to the disputed balance. Again, it is not alleged that any effort was ever made by plaintiff to explain to defendant his reasons for disputing the accuracy of the account, or that he ever pointed out to defendant the items which he regarded as erroneous; or asked for a more detailed statement; or that he ever offered to pay any part of the balance claimed to be due.

How could the chancellor know whether there was any just or reasonable ground for disputing the account, from the mere statement by the pleader that the account "is inaccurate and grossly excessive," without the slightest reference

to the contract between the parties or the statement of a single fact? It is not greatly different from charging fraud without setting out the facts which constitute the fraud.

It is not necessary to cite authorities for the proposition that in any bill for injunction it is required that the statements of facts which the plaintiff expects to prove shall be full, clear and frank. As said in *Slinson v. Ellicott City,* 109 Md. 111, "When a party seeks the aid of a court by a writ of injunction, his right to it ought not to be left in doubt by the allegations of the bill, and the defendant ought not to be required to guess what the plaintiff does rely on."

That is applicable to every application for injunctive relief. It is especially apt in cases to restrain the use by a public utility company of the remedy which is essential to its very life and to the satisfactory performance of its obligations to the public. It needs no argument to show that the costs and delays that would be involved in suing on the thousands of small accounts which make up the business of such a company would make it impossible to give the service which the public has the right to demand, except at prohibitive rates. As was said in *Carter v. Suburban Water Co.,* 131 Md. 91 (upon which case appellant places his principal reliance), quoting from *Poole v. Paris Mountain Water Co.,* 81 S. C. 438, the right to discontinue the service for non-payment of recent and just bills "cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with a show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term." But in the *Carter* case the cause of complaint was set out with at least some degree of definiteness, and there was an allegation in the bill that the plaintiff had expressed to defendant his willingness to adjust the accounts and to pay for the services which he admitted had been rendered, and the defendant had positively refused even to consider plaintiff's claim. All such allegations are absent from the bill of complaint in the case at bar. And here there is no such

"show of reason" for the dispute as would justify a chancellor in granting the relief prayed.

If we are at liberty to consider the original bill of complaint and the earlier amended bills, demurrers to which were sustained (and this we do not decide, merely calling attention to the fact that *Carter v. First National Bank*, 128 Md. 581, cited by appellee, is not conclusive upon this point, because there the filing of the amended bill was voluntary and not after a demurrer had been sustained), it would not help plaintiff's case, because in none of them is there a statement of facts upon which plaintiff relies for his assertion. In the first amended bill, it is true, there is an allegation "that the present account as rendered by the defendant to your orator is inaccurate and grossly excessive (in that it charges your orator with services which the defendant never rendered to your orator)". But there is nothing to indicate that the plaintiff had any definite idea as to which of the services charged for were not rendered. And it is significant that the allegation referred to does not appear in the original bill nor in either of the other amended bills. It is stated in appellee's brief, and not contradicted, that in the arguments on the several demurrers attention was called to the absence of allegation of facts, and yet this deficiency was not supplied in subsequent amendments. The impression left by the bills is that plaintiff honestly suspected he had been overcharged, but was unable to point out any of the items erroneously charged. In such a situation relief cannot be obtained by injunction. A repetition of the difficulty might be avoided by keeping a record of the use of the phone.

Finding no error in the decree, it will be affirmed.

*Decree affirmed, with costs to appellee.*