831 A.2d 472

**Calvin B. SPICER, et al.**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY, et al.**

No. 1578, Sept.Term, 2002.

Court of Special Appeals of Maryland.

July 2, 2003.

Reconsideration Denied Sept. 29, 2003.

152

---

Marnitta King, College Park, for appellants.

Odogwu O. Linton, Baltimore, for BG&E.

Susan Stevens Miller, General Counsel, Sandra L. Hall, Asst. General Counsel, Baltimore, for PSC.

Submitted before MURPHY, C.J., and SONNER, SMITH, MARVIN H., (Retired, Specially Assigned) JJ.

SMITH, J.

Appellant, Calvin B. Spicer, is a former customer of Baltimore Gas and Electric Company ("BGE") and is proceeding *pro se*.[1] The appellees are BGE and the Maryland Public Service Commission ("the Commission"). Spicer appeals a judgment of the Circuit Court for Baltimore City, which affirmed a decision of the Commission approving the termination of BGE's services to Spicer's rented home. Spicer asks us to determine whether the Commission erred when it concluded that BGE properly billed him for services for months during which he was not a customer of record, and properly cut off his service when he failed to pay those bills.

It appears from the record that the Commission failed to conduct the proceedings necessary to assess the propriety of

---

1. James Reid (hereinafter referred to at times as "Reid") is also a named appellant in this appeal and was a named party in the circuit court. Although he was not a party in the proceedings before the Commission, it is apparent that he has assisted Spicer at every stage of the litigation. It is alleged in the appellant's brief that Spicer

> is a 100 percent disabled war veteran who has been diagnosed with chronic schizophrenia.... As a result, James Reid has been entrusted with his care and well-being. James Reid conducts business on Spicer's behalf, which includes writing and speaking for Spicer. Spicer has resided with Reid since the early 1990's.

The record contains no conclusive evidence that Reid is Spicer's legal guardian, and no determination to that effect has yet been made by any trier of fact in connection with this case. Reid was never properly joined as a party at any stage of the litigation, moreover. *See* Md.Code (1998), § 3–106 of the Public Utilities Article (regarding intervention in proceedings before the Commission); *id.*, § 3–202 (regarding circuit court review of actions by Commission); *id.*, § 3–209 (regarding this Court's review of actions by Commission); and Md. Rules 2–212, 2–214, 2–341, and 7–204.

Reid, along with his estranged or former wife, is apparently the co-owner of the house to which the disputed BGE service was supplied. He allegedly resided in the house during the time that Spicer resided there. For that reason, Reid may well feel connected to the controversy. Because BGE has never sought payment from Reid and because Reid has not properly been made a party to the case, however, we shall proceed as though Spicer is the sole appellant.

BGE's actions. Therefore, we shall vacate the judgment of the trial court and remand the case to that court with instructions to vacate the decision of the Commission and to remand the case to the Commission for appropriate proceedings.

## FACTS

The record before this Court is, at best, wanting. Little is provided to confirm the factual allegations set forth by the parties in their briefs. We set forth the facts that can be gleaned from the record.

Spicer is a 61–year–old man who suffers from a permanent disability—presumably schizophrenia. He apparently receives assistance from a friend, James Reid.

Reid and his wife Linda, from whom Reid is now separated or divorced, own a house at 5517 Haddon Avenue in Baltimore. They had been renting the house to an organization known as Seniors United of America, Inc. Nothing in the record explains the nature of that corporation. Two principals of Seniors United, Charles Lawyer and Reginald Spence, lived in and operated the business from the Haddon Avenue house.

Gas and electric service to 5517 Haddon Avenue was originally placed in Linda Reid's name. At some point, at the Reids' request, the service was transferred to Charles Lawyer's name. Lawyer failed to pay any of BGE's bills.

In March of 2001, an application was made to have the gas and electric services transferred to Spicer's name. BGE contacted Linda Reid in order to verify that Spicer, and not Lawyer, was actually residing in the house. Mrs. Reid provided BGE with a sublease between Seniors United and Spicer. The sublease was dated September 1, 2000, and indicated that the subtenancy was to begin on October 1, 2000. It provided that, in exchange for $800.00 a month in rent, Spicer was entitled to "one rooming unit [with] complete use of the house plus board [and] keep services." A handwritten amendment to the sublease, initialed by Spicer and dated March 13, 2001, stated that Spicer was "responsible for the payment of all

utilities and services as amended forward from October 19, 2000[and] subtracted from rents due monthly."

Upon receiving the copy of the lease, BGE billed Spicer for a security deposit and for the services provided to 5517 Haddon Avenue from October 19, 2000. Spicer apparently responded by telephoning a BGE representative and complaining that the bill was in error.[2] According to Spicer, the representative informed him that BGE had determined that he *was* responsible for the bill and that if he did not pay it his service would be terminated.

Spicer then filed an "Inquiry/Dispute Form" with the Commission. He contended that his BGE service did not begin until March of 2001, and that Charles Lawyer was responsible for the bill up until that point. An employee of the Commission's Office of External Relations ("OER") agreed with BGE that the bill was accurate.[3] In a letter to Spicer, the employee explained:

I received notification from the Company that your inquiry/complaint has been responded to by BGE's credit Department. BGE records do show that you applied for service on March 30, 2001. As stated in your complaint, there was an outstanding bill for this address for Mr. Charles Lawyer, and a turnoff notice on the past due bill. BGE needed to confirm that you were indeed the new tenant before the service could be transferred into your name. Therefore BGE contacted the owner of the property, Linda Reid, who advised BGE that you had been the tenant of record since October 1, 2000. A copy of the signed lease was forwarded to BGE by the property owner. The lease was signed on September 1, 2000 and was effective as of October 1, 2000. The document contained an amendment that Mr. Spicer was to be responsible for utilities as of October 19, 2000, and the amendment was initialed by you. Based upon this, the billing for the

---

2. *See* Md.Code Regs. ("COMAR") tit. 20, § 32.01.03.

3. COMAR 20.32.01.04F–K.

previous tenant, Mr. Lawyer, was amended to stop his responsibility as of October 19, 2000, and your service was noted to begin as of that date.

Spicer filed a request for further review by the Commission, to which he attached a "corrected" lease.[4] The corrected lease indicated that Spicer's subtenancy at 5517 Haddon Avenue began on October 1, 2000, but that his responsibility for utility payments did not begin until March 19, 2001. The OER Assistant Manager reviewed the matter and determined that the earlier decision was correct.

Spicer then appealed the decision by filing a formal complaint with the Commission.[5] Again, the Commission responded to the effect that, based on the information it had received from BGE, it believed that the bill was correct.

Spicer filed a petition for judicial review in the Circuit Court for Baltimore City, naming both BGE and the Commission as respondents. A hearing was held at which Spicer attempted to offer into evidence three notarized letters—one signed by Linda Reid, one signed by Reginald Spence, and one signed by Philip Street and Moziah Saleem. In her letter, Linda Reid asserted that she had "nothing to do with" the property at 5517 Avenue and that she made that clear to the BGE representative who called her regarding Spicer. She further asserted that she *did* know that James Reid and Spicer lived at a different address through February of 2001. Reginald Spence asserted in his letter that he and Charles Lawyer were responsible for the bill in question and that he would "accept full responsibility for the entire bill." Finally, Philip Street and Moziah Saleem asserted that they had lived with James Reid and Spicer at a different address from January of 2000 until February of 2001. BGE agreed to postpone the hearing in order to conduct an investigation into whether it could collect from Reginald Spence. The hearing was therefore postponed for four months.

4. COMAR 20.32.01.04L.

5. COMAR 20.32.01.04M.

When the hearing resumed, BGE reported that Spence had indeed agreed to a payment plan but had thereafter failed to make any payments. BGE indicated it was not willing to release Spicer from liability for the bill. The Commission asserted that, in any event, the controversy was moot. It pointed out that BGE service to 5517 Haddon Avenue had been terminated in December of 2001, after Spicer had failed to pay his security deposit or any of the bills from March of 2001 through December of 2001—a period during which he was undisputedly a tenant at the property.

The trial court reluctantly affirmed the Commission's decision, stating:

> ... [T]he circumstances before this Court place[ ] this Court in the position of an appeal from the agency to this Court. In so doing it becomes a question of whether or not there is substantial basis for the agency or Commission's determination. What is being approached here is suggesting facts and circumstances and asking this Court to superimpose himself as to the agency in making a factual determination as to responsibility. This Court, in an administrative appeal, is not and cannot be the trier of fact, or fact finder. It is that of the agency. The agency has made a determination. Based on the record before this Court, ... under the circumstances the Court must conclude that there is substantial evidence to support the Commission finding or agency determination.... Based on the evidence before this Court and applicable law, this Court must find itself in an uncomfortable position, but must follow the law. The administrative decision is hereby affirmed.

### ISSUE

Spicer now argues, in essence, that the trial court erred in affirming the Commission's decision in that, *inter alia,* the Commission's decision was "made upon unlawful procedure" and was "unsupported by substantial evidence." We agree.

## STANDARD OF REVIEW

 The standard of judicial review applicable to decisions of the Commission "is consistent with the standard of review applicable to all administrative agencies." *Office of People's Counsel v. Maryland Pub. Serv. Comm'n,* 355 Md. 1, 15, 733 A.2d 996 (1999). As this Court has summarized:

> We review the decision of an administrative agency to determine if it is " 'in accordance with the law or whether it is arbitrary, illegal, and capricious.' " ... We are " 'limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " ... In applying the substantial evidence test, we must decide " ' "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." ' " ... When reviewing the agency's legal conclusions, "we may substitute our judgment for that of the agency if there are erroneous conclusions of law." ...

*Rideout v. Dep't of Pub. Safety and Corr. Serv.,* 149 Md.App. 649, 656, 818 A.2d 250, 254 (2003) (citations omitted).

## DISCUSSION

 The Commission asserts that this appeal is moot because it was proper for BGE to turn off service to Spicer for non-payment of the undisputed portion of his bill. Spicer does not dispute that he applied for gas and electric services in March of 2001 and has not paid any amount for services since that time. However, BGE acknowledges that the decision to terminate services to Spicer is due, at least in part, to the fact that Spicer has not paid bills for services prior to March of 2001. Thus, Spicer is correct to point out that this case is not moot because the turn-off notice clearly reflected arrears for services provided before March of 2001. Whether or not Spicer owes money for services prior to March of 2001 *is* in dispute. Thus, the Commission's reliance on *Surratt v. Chesapeake & Potomac Tel. Co.,* 156 Md. 510, 514, 144 A. 495, 496–97 (1929),

for the proposition that BGE can terminate services for undisputed bills, is misplaced. Rather, as the Court of Appeals in *Surratt* stated, "the right to discontinue the service for non-payment of recent and just bills ' "cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with a show of reason disputes." ' " *Id.* at 514, 144 A. at 497 (citations omitted). Spicer has shown that his services were terminated because he has not paid this disputed bill. Thus, this controversy is not moot.

In accordance with § 7–305 of the Public Utilities Companies Article, "[a] gas company or electric company may bill its customers for gas, electricity, or any other service it renders only on the basis of the net total cost of the service under the applicable rate that is filed for that service." Md. Code (1998), § 7–305(a) of the Pub. Util. Co. Article. Regulations promulgated by the Commission provide that " 'Customer' means a person receiving service from a utility, in whose name the account is maintained, for use in the premises." Md.Code Regs. ("COMAR") tit. 20, § 31.01.02(2). "Customer" is also defined in the regulations as "any person, association, partnership, corporation, or governmental agency who has applied for utility service, or in whose name the utility service account is maintained." COMAR 20.32.01.02B(2). The parties do not dispute that during the period in question, prior to March of 2001, the BGE account for 5517 Haddon Avenue was not in Spicer's name. Thus, Spicer's alleged responsibility for the bills during that time cannot be based on any contractual obligation to BGE. BGE concluded that Spicer could be held liable for the bill based on evidence that he resided in the house during the period in question.

The Court of Appeals has made clear that the Commission is authorized to resolve billing disputes such as the one in the instant case, where the termination of services is a possible result. *See Everett v. Baltimore Gas & Elec. Co.*, 307 Md. 286, 513 A.2d 882 (1986), *overruled on other grounds by Coleman v. Anne Arundel County Police Dep't*, 369 Md. 108,

797 A.2d 770 (2002). The Commission's own regulations set forth mandatory guidelines for resolving such disputes. They direct, in pertinent part:

F. After receipt of an inquiry, [the Office of External Regulations] shall initiate a review and an investigation to resolve the matter that includes but is not limited to:

(1) Obtaining information from the utility and customer;

(2) Reviewing applicable statutes, regulations, and tariffs; and

(3) Mediating between the parties.

G. Both a utility and a customer shall be given an opportunity to respond to the position or information provided to [the Office of External Relations] by the other party.

COMAR 20.32.01.04F and G.

There is no indication from the record that the Commission followed these mandatory regulations. Reid, on behalf of Spicer, initiated this action against BGE before the Commission. Approximately two weeks later, Susan Brown from the Commission's OER made a decision that BGE had not billed Spicer in error. Although Brown stated that she reviewed BGE records, including the lease information provided by Linda Reid, there is no indication that she contacted Spicer after receiving information from BGE, as required by section 20.32.01.04G of the regulations. Section 20.32.01.04F(3) requires the Commission to mediate between the utility and the customer. There is no indication in the record that Brown attempted mediation as required by the regulations.

Furthermore, Brown admits that she reviewed only the information provided to her. There appears to have been no attempt by Brown to ascertain when Spicer lived at the Haddon Avenue address. Brown seems to have accepted as true BGE's position that the lease established Spicer lived in the home since October 2000. Had Brown obtained information from Spicer prior to issuing her decision, she would have had before her the four documents Spicer provided with his July 9, 2001 letter. These documents include an amended

lease indicating that Spicer did not live at the Haddon Avenue address until mid-March 2001. The amended lease calls into question the period of time Spicer resided at the Haddon Avenue property and suggests that it was an error to bill Spicer for the period between October 2000 and March 2001. In addition, the amended lease suggests that Spicer's rent payment included his utilities, making his landlord ultimately responsible for payment to BGE.

Robert Harris, assistant manager of the OER, wrote a letter to Spicer on July 31, 2001, after having received the amended lease. Although the amended lease indicated Spicer was only liable for utility payments beginning in March 2001, and then only as part of rents due, Harris wrote "there is not sufficient basis to accept this revision. Accordingly, you are responsible for service that was used since October 19, 2000."

Spicer then filed a formal appeal, which was reviewed by Felecia L. Greer, the Executive Secretary of the Commission. Greer referred to the work done by Brown and to Harris' further review, but she made no attempt to ascertain when Spicer actually resided at the Haddon Avenue address. Rather, it appears that Greer took as true what was represented to her by BGE's customer account division, and relied on the findings of Brown and Harris without her own investigation.

There must be sufficient evidence before the agency to support its finding. *See Rideout*, 149 Md.App. at 656, 818 A.2d at 254. Reluctantly, the circuit court in this case "conclude[d] that there is substantial evidence to support the Commission finding." We disagree. The circuit court found that, "[b]ased on the record before this Court, ... under the circumstances the Court must conclude that there is substantial evidence to support the Commission finding or agency determination." However, it is clear that the evidence before the Commission was scant and did not contain the same material as that presented to the circuit court. Although the circuit court was correct that it cannot be the fact finder in an administrative appeal, it must insure that the record before

the agency contained substantial evidence to support its conclusion. *See Rideout,* 149 Md.App. at 656, 818 A.2d at 254.

██ The substantial evidence test is not satisfied if no rational fact finder could have concluded as the trier of fact did when reviewing the evidence before it. *See id.* The determination to charge Spicer for utilities prior to March of 2001 was made originally by Brown without following any of the procedures required by the regulations. No subsequent review by the Commission took into account any of the documents presented by Spicer. Each person at OER that reviewed this matter did so without considering the amended lease.

A proper investigation by the Commission would have revealed that BGE is required to contact by phone, or in person, any individual whose services it wishes to terminate during the winter. COMAR 20.31.03.03. Spicer's services were shut off in December of 2001, yet there is no evidence that BGE presented the Commission any documentation as to, among other things, the dates that it contacted Spicer, either by phone or in person. *See id.* Testimony from James Reid indicates that the first time BGE contacted Spicer was through a collection agent. In addition, if BGE was aware that Spicer was either elderly or handicapped, it was required to inform him of financial assistance and payment plans prior to shutting off his utilities. *See* COMAR 20.31.03.02C. Although the first letter Spicer received from the Commission contained this information, the first letter from BGE did not.

██ The Commission has created an investigation and review process to resolve disputes between BGE and customers and to insure that termination of service does not occur for "failure of a previous customer to pay for service to the premises (COMAR 20.31.02.01A)." *Baltimore Gas & Elec. Co. v. Hendricks,* 345 Md. 509, 514, 693 A.2d 773, 775 (1997). *See also* Md.Code (1998), § 2–113(a) of the Pub. Util. Co. Article (Commission must insure just and lawful administration of utility service in the interest of the public). Therefore, the Commission is required to investigate the complaint, obtain

information from both the client and the utility, and attempt to mediate the dispute. *See* COMAR 20.32.01.04F and G. Since this did not occur, the circuit court erred in finding that the agency decision was supported by substantial evidence. We note that, "in a proposed termination of service case, when the customer demonstrates a bona fide dispute, the utility bears the burden of production and persuasion in establishing grounds for the termination." *Hendricks*, 345 Md. at 520, 693 A.2d at 778.

On remand, the Commission needs to make a full investigation of the facts, following the regulations set forth in COMAR 20.32.01.04F and G. The areas that beg investigation include Spicer's contentions that he did not move into the Haddon Avenue residence in October of 2000, affidavits indicating he resided elsewhere until March of 2001, and information now present that Reginald Spence, of Seniors United, is responsible for the back-due bills.

The Commission should also review the bills that were sent to Spicer by BGE. These include the March 30, 2001 BGE bill for Spicer at the 5517 Haddon Avenue address, showing no outstanding balance, and the April 19, 2001 BGE bill to Spicer, showing a billing period that extends back to October 2000, over a year before Spicer applied for services. The April 19, 2001 BGE bill that charged Spicer for services from October 19, 2000 to April 4, 2001 did not state that there was any "outstanding balance," but did calculate a new total amount of services in excess of $2,700. It appears that BGE transferred the outstanding balance owed by Charles Lawyer for the Haddon Avenue address to the total amount of services provided to Spicer. In its brief BGE now asserts that it needed a "grant of authority" from the Commission to consider new evidence that Reginald Spence, or Seniors United, is the proper party to bill for services before March 2001. This is contrary to COMAR 20.32.01.03, requiring BGE to investigate a consumer complaint. BGE needs no other authority to rectify a potentially inaccurate bill.

The circuit court in this case asked the Commission to describe the procedures it follows when someone alleges that he has been billed erroneously for another's debt. The Commission responded that billing the wrong customer does not occur frequently, but were this matter to be reviewed again new evidence could be introduced. The Court of Appeals addressed just such a situation in *Hendricks,* 345 Md. 509, 693 A.2d 773, and concluded that the Commission's role was to insure proper fact finding and insure dispute resolution.

In addition, the Commission should endeavor to determine whether the language in the lease obligates Spicer to personally pay for utilities. The amended lease may be an accord and satisfaction discharging Spicer from the terms of the first lease, or merely a reformation of a mutual mistake in the drafting of the first lease. *See* Restatement 2d of Contracts, §§ 155, 281 (1981). Although the Commission points out that the lease allowed Spicer full use of the house, the Public Utilities Article of the Maryland Code states that a " 'Retail gas customer' excludes an occupant of a building in which the owner/operator or lessee/operator manages the internal distribution system serving the building and supplies gas and gas supply services solely to occupants of the building for use by the occupants." Md.Code (1998, 2002 Cum.Supp.) § 1–101(cc) of the Pub. Util. Co. Article. Additionally, the amended lease states that Spicer will pay the utilities out of his monthly rent, indicating Spicer's landlord may be the correct obligor for this debt.

The Commission should also determine if its investigation would be aided by hearing testimony from material witnesses such as Reginald Spence, Charles Lawyer, or Linda Reid. Reginald Spence signed a lease on behalf of Seniors United for the use of the sunroom, living room, dining room, kitchen, and restrooms of the Haddon Avenue property and now claims responsibility for the back payments. Charles Lawyer was the customer of record in whose name services were provided at the Haddon Avenue address during the period in question. Linda Reid, a co-owner of the property, now insists that she does not believe Spicer lived at that address before March of

**166**

2001. Pursuant to COMAR 20.07.02.03B, the Commission may issue subpoenas and subpoenas duces tecum on its own motion for witness.

 Finally, but perhaps most importantly, we suggest the Commission inquire into the nature of the guardianship of Spicer by James Reid. It is well established that those persons who are mentally unable to contract may create a voidable obligation. *See Desser v. Woods,* 266 Md. 696, 706, 296 A.2d 586, 592 (1972). *Accord* Restatement 2d of Contracts §§ 12, 13, and 15 (1981). "Capacity to contract may be partial and its existence in respect of a particular transaction may depend upon the nature of the transaction or upon other circumstances." Restatement 2d of Contracts § 12.

**JUDGEMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO VACATE THE DECISION OF THE PUBLIC SERVICE COMMISSION AND REMAND TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**