REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0835

September Term, 2014

_____

COLUMBIA GAS OF MARYLAND, INC.

v.

PUBLIC SERVICE COMMISSION OF
MARYLAND, et al.

_____

Kehoe,
Hotten,
Reed,

JJ.*

_____

Opinion by Hotten, J.

_____

Filed: August 28, 2015

* Judge Douglas R. M. Nazarian did not
participate in the Court's decision to designate
this opinion for publication in the Maryland
Appellate Reports pursuant to Maryland Rule 8-
605.1

Appellant, Columbia Gas of Maryland, Inc. ("Columbia"), is a natural gas utility that serves customers in Western Maryland. In 2013, it purchased a parcel of land known as the Cassidy Property in Hagerstown, Maryland. Appellees are the Maryland Public Service Commission ("the Commission") and the Office of the People's Counsel ("OPC").[1] As part of its last request that the Commission increase Columbia's rates and charges, Columbia sought to recover anticipated remediation costs regarding two of its properties, including the Cassidy Property. Following three days of evidentiary hearings, the Chief Public Utility Law Judge ("the CPULJ") of the Commission denied appellant's request because it failed to provide evidence that the existing customers should bear the cost of the Cassidy Property clean up when they received no benefit. Thereafter, appellant appealed to the Commission, which affirmed the CPULJ's decision and determined that the Cassidy Property was not "used and useful" in providing service to current customers. Appellant sought judicial review in the Circuit Court for Washington County, alleging that the Commission acted arbitrarily and capriciously, violated Maryland's Public Utilities Article, and that its decision constituted an unlawful taking, without just compensation, in violation of both the Maryland and United States Constitutions. The circuit court affirmed the Commission's decision, prompting appellant's appeal, and the following questions for our consideration.

---

[1] The OPC is a State of Maryland agency, which works independently to represent Maryland's residential consumers in electric, natural gas, telecommunications, private water and certain transportation matters before the Maryland Public Service Commission, federal regulatory agencies and the courts. The People's Counsel is appointed by the Attorney General, with the advice and consent of the Senate, and acts independently of the Maryland Public Service Commission and Office of Attorney General.

[I.] Was the Commission's denial of Columbia's request for recovery of costs to acquire and remediate property in Hagerstown arbitrary and capricious?

[II.] Did the Commission's denial of Columbia's request for recovery of costs to acquire and remediate property in Hagerstown constitute an error of law in that it violated the Maryland Public Utilities Article?

[III.] Did the Commission's denial of Columbia's request for recovery of costs to acquire and remediate property in Hagerstown constitute an unlawful taking without just compensation, in violation of the Maryland and United States Constitutions?

For the foregoing reasons, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

Appellant is a public service company, which provides its customers natural gas through a pipeline distribution network in Western Maryland. It is subject to an enforcement action by the Maryland Department of Environment ("MDE") to clean up the site it owns at the former Hagerstown Manufactured Gas Plant ("MGP").

Before natural gas became commercially available, Columbia's predecessors used the Hagerstown MGP site to manufacture gas from 1887 to 1952. On an adjacent property, known as the Cassidy Property, the former Hagerstown MGP operated a coal tar pond before it was sold in the early 1920s. The Cassidy Property was part of a larger parcel owned by the Hagerstown American Light and Heat Company, which began coal gas manufacturing operations on the larger parcel in 1891. The larger parcel consisted of 7.1 acres. The Cassidy Property consisted of a 4.5 acre parcel and was sold to the Cassidy

Trucking Company in the 1920s.[2]  The Hagerstown American Light and Heat Company continued to operate its manufactured gas on the remaining 2.6 acre parcel until 1949, when it ceased operations.

In 1968, appellant purchased the 2.6 acre parcel and began its operations as a service center, where appellant's employees run the Company's main hub of gas distribution operations and maintenance activity to serve natural gas to customers.  In 2013, appellant purchased the remaining 4.5 acres known as the Cassidy Property. Appellant testified that the current uses of the Hagerstown MGP site included: "(1) use for all service center operations, (2) use for driver training and parking, and (3) storage of the byproducts of the MGP process."

On February 27, 2013, appellant filed an application with the Commission seeking authority to increase the Company's rates and charges with a proposed effective date of March 29, 2013.  Among the many elements of its rate increase request, Appellant estimated that it would take approximately five years for remediation of the Hagerstown MGP site, and that the company would incur new costs ranging from $6 million to under $21 million as a result.

On March 4, 2013, the Commission suspended the proposed effective date of the increased rates for a period of 150 days, which was later expanded to an additional 30 days, and delegated the case to the CPULJ division for review.  Evidentiary hearings were held at the Commission's offices in Baltimore from June 18 until June 20, 2013.  During that

---

[2] The Cassidy Trucking Company operated as a trucking business and not a regulated gas business.

time, written testimony and exhibits were entered into the record, and witnesses were presented and subject to cross-examination.

On August 9, 2013, the CPULJ Division issued a proposed order, which granted in part and denied in part appellant's application. Thereafter, appellant filed a notice of appeal to the Commission, challenging the proposed order because it denied appellant the right to recover from its ratepayers costs incurred from the purchase and environmental remediation of the Cassidy Property.

On September 23, 2013, the Commission issued its Order No. 85858 and denied appellant's appeal regarding the Cassidy Property. Appellant filed a petition for judicial review in the Circuit Court for Washington County on October 23, 2013. Thereafter, the court issued a memorandum and order affirming the Commission's decision.

Appellant noted a timely appeal. Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issues presented.

**STANDARD OF REVIEW**

This case is governed by Maryland Code (1998 Repl. Vol. 2010), § 3-203 of the Public Utilities Article [hereinafter "Public Utilities"], which provides:

> Every final decision, order, or regulation of the Commission is prima facie correct and shall be affirmed unless clearly shown to be:
>
> (1) unconstitutional;
>
> (2) outside the statutory authority or jurisdiction of the Commission;
>
> (3) made on unlawful procedure;
>
> (4) arbitrary or capricious;

(5) affected by other error of law; or

(6) if the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole.

We review decisions of the Commission as "consistent with the standard of review applicable to all administrative agencies." *Office of People's Counsel v. Maryland Pub. Serv. Comm'n,* 355 Md. 1, 15 (1999). Thus, "[s]o long as a reasoning mind could have reached the same conclusion as the agency, we will not disturb the agency's decision. Because the Commission is well informed by its own expertise and specialized staff, a court reviewing a factual matter will not substitute its own judgment on review of a fairly debatable matter." *Communications Workers of Am. v. Pub. Serv. Comm'n of Maryland*, 424 Md. 418, 433 (2012) (citations omitted). This Court elaborated:

> We review the decision of an administrative agency to determine if it is in accordance with the law or whether it is arbitrary, illegal, and capricious. . . . We are limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. . . . In applying the substantial evidence test, we must decide whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. . . . When reviewing the agency's legal conclusions, we may substitute our judgment for that of the agency if there are erroneous conclusions of law. . . .

*Spicer v. Baltimore Gas & Elec. Co.*, 152 Md. App. 151, 159 (2003) (quoting *Rideout v. Dep't of Pub. Safety and Corr. Serv.,* 149 Md. App. 649, 656, (2003) (internal quotations and citations omitted)).

**DISCUSSION**

**I.**

The ultimate issue surrounding this case was whether the property for which environmental remediation cost recovery was sought, is "used and useful" in providing service to current utility customers.

The Commission[3] applies the statutory ratemaking policy that requires a "just and reasonable rate" pursuant to Public Utilities § 4-101:

In this title, "just and reasonable rate" means a rate that:

(1) does not violate any provision of this article;

---

[3] Public Utilities § 2-113 provides:

(a) *In general.*— (1) The Commission shall:

(i) supervise and regulate the public service companies subject to the jurisdiction of the Commission to:

1. ensure their operation in the interest of the public; and

2. promote adequate, economical, and efficient delivery of utility services in the State without unjust discrimination; and

(ii) enforce compliance with the requirements of law by public service companies, including requirements with respect to financial condition, capitalization, franchises, plant, manner of operation, rates, and service.

(2) In supervising and regulating public service companies, the Commission shall consider the public safety, the economy of the State, the conservation of natural resources, and the preservation of environmental quality.

(b) *Construction.*— The powers and duties listed in this title do not limit the scope of the general powers and duties of the Commission provided for by this division.

(2) fully considers and is consistent with the public good; and

(3) except for rates of a common carrier, will result in an operating income to the public service company that yields, after reasonable deduction for depreciation and other necessary and proper expenses and reserves, a reasonable return on the fair value of the public service company's property used and useful in providing service to the public.

Public Utilities § 4-102 directs the Commission to set just and reasonable rates:

(a) *Scope of section.*— This section does not apply to small rural electric cooperatives.

(b) *Power.*— The Commission shall have the power to set a just and reasonable rate of a public service company, as a maximum rate, minimum rate, or both.

(c) *Order.*— (1) The Commission shall issue an order, including the rate set under subsection (b) of this section.

(2) The Commission shall serve the order on each affected public service company.

The Commission established a general ratemaking policy for extraordinary expenses in the context of request for environmental cleanup costs in 1989:

By way of background, we will explain our general ratemaking policy pertaining to extraordinary expenses incurred by a public service company. The Commission has long recognized that utilities will, from time to time, incur necessary and proper expenses which are sufficiently extraordinary as to warrant special ratemaking treatment. Such expenses are extraordinary in the sense that the costs are not annually recurring, are not able to be anticipated, and are of substantial magnitude. Typically, rather than include the entirety of such costs in the formulation of test year expenses, the Commission has determined it to be fair and equitable to amortize the extraordinary expense over a period of years. Also, because equity or debt is being utilized during the period of amortization to pay the extraordinary expense, the unamortized portion of the extraordinary expense is included in

the calculation of the rate base.[4]  However, as an exception to this general rule, the Commission occasionally will determine that the unamortized portion should not be included in the calculation of the rate base.  Such a determination is based upon a finding that the circumstances of the extraordinary expense were of a type that, for reasons of equity, the expense should be shared between the ratepayers and the stockholders. By excluding the unamortized portion of the extraordinary expense from rate base, the Commission shifts from ratepayers to stockholders the carrying charge associated with the unamortize[d] balance.[5]

First, appellant contends that the Commission's denial of its environmental remediation costs, which includes purchase of the property and cleanup for the Cassidy Property, was arbitrary and capricious.  Appellant asserts that Commission orders dating back to 1989 have allowed regulated gas companies in Maryland to recover these costs from customers.

Appellant refers to six tests, including an exception, which must be applied to a gas company seeking to recover environmental remediation costs from its customers.  The six tests appellant outlines are, "[r]emediation [c]osts must be [q]uantifiable," "[r]emediation [c]osts [m]ust [n]ot [b]e [i]ncurred [b]ased on [i]mprudence or [m]ismanagement," "[t]he [e]nvironmental [r]emediation [m]ust [b]e [l]egally [m]andated," "[t]he [e]nvironmental [h]azard [m]ust [r]eside on [p]roperty [u]sed and [u]seful to [appellant's] [c]ustomers," "[m]ust [c]urrently [b]e a [g]as [c]ompany [s]erving [g]as [c]ustomers," and the exception to the "[u]sed and [u]seful" test.

---

[4] Rate base represents the investment the company makes in plant and equipment in order to provide service to its customers.

[5] *Re Chesapeake Utilities Corporation*, 80 Md. PSC 187 (Case No. 8157, Order No. 68462, June 9, 1989), at *2.

In rejecting Appellant's request, the Commission discussed the same 1989 order and indicated:

> In considering whether the purchase and remediation costs of either or both of the parcels in this case should be included in rate base, the Commission's holding in *In the Matter of the Application of Chesapeake Utilities Corporation (Citizens Gas and Cambridge Gas Divisions) for an Increase in Rates for Natural Gas Service and to Consolidate the Natural Gas Tariffs*, Case No. 8157, is instructive. After noting that the record contained no persuasive evidence that the incurrence of the clean-up costs was due to imprudence or mismanagement by the utility, the Commission deemed the environmental remediation costs as operating expenses incurred in the current course of doing business. [ ] In so doing, however, the Commission stated, "[f]or ratemaking purposes, the important fact about this site is that it is the location of a currently operating gas distribution facility."

In that case, the Commission permitted Chesapeake Utilities to recover the cost of remediation of a property in rate base. It indicated, "[f]or ratemaking purposes, the important fact about this site is that it is the location of a currently operating gas distribution facility." *Id.* at *2. In the case at bar, the Cassidy Property stored waste, but did not provide services to appellant's current customers. The site to be remediated must provide service to the Company's customers in order to be eligible to recover the costs in rate base.

The Commission reviews requests to recover environmental cleanup costs individually, based on the particular facts and circumstances of each case.[6] The

---

[6] Public Utilities § 3-113 states:

> (a) *Basis and form of orders.*— A decision and order of the Commission in a contested proceeding shall:
>
> (1) be based on consideration of the record;
>
> (2) be in writing;

(continued . . .)

Commission applies the general ratemaking policy as stated above, and, where appropriate, allows extraordinary environmental remediation expenses to be passed on to customers in accordance with Public Utilities § 4-101(3). But nothing in that general policy entitles appellant, or any other company, to recover costs simply because they have been incurred. Instead, the company must prove that the asset is "used and useful" and that the remediation costs were incurred prudently.

Appellant's contention that the Commission established an exception to the "used and useful" test must fail. Appellant avers that the "necessary and proper" standard should apply to the expense of cleaning up the Cassidy Property and the Commission improperly applied the "used and useful" test to the remediation cost. However, appellant fails to consider that regardless of whether the Commission first determines whether the expense is necessary and proper, the ultimate decision depends on whether there is a connection between the property and the service it provides to current customers.

The Commission discussed the environmental remediation costs and concluded:

> [Appellant] attempts to draw this connection by arguing on appeal that storage of environmentally damaging MGP byproducts on the Cassidy Property between the 1920's and 2013 provides a benefit to current customers. However, in testimony [appellant] admitted that such storage of by-products did not render the Cassidy property used and useful in the class

---

(. . . continued)

(3) state the grounds for the conclusions of the Commission; and

(4) in the case of a complaint proceeding between two public service companies, be issued within 180 days after the close of the record.

- 10 -

rate-making sense as it was not in the rate base and Columbia earned no recovery on it.[ ] The storage of by-products on the Cassidy Property for the past 90 years does not constitute a benefit to current customers. The argument that the [appellant's] distribution system would not exist but for the site of which the Cassidy Property was once a part, is tenuous at best, and is also rejected.

A[t] the hearing in this case, the CPULJ questioned [appellant] Witness Kempic at length about the Cassidy Property and the Company's environmental remediation of the site. The CPULJ confirmed that the [appellant] purchased the Cassidy Property to remediate it.[ ] Mr. Kempic testified that since its re-purchase the Cassidy Property is being used for a driver training course occasionally.[ ] However, when the CPULJ questioned Mr. Kempic as to how the [appellant] would use the Cassidy Property in the future once remediated, Mr. Kempic admitted that the [appellant] didn't know how the property might be used, and wouldn't know until the remediation was complete.[ ] Thus, the CPULJ properly disregarded testimony as to the use of the Cassidy Property for a driver training course; the CPULJ's finding that the Cassidy Property was purchased purely to lower the remediation cost exposure of that parcel[] is fully supported by the record in this case. Repurchase of the Cassidy Property for this reason does not provide the necessary connection between the remediated property and the service today's Columbia customers will receive from it. Thus the Cassidy Property is not used and useful.

We agree. Appellant failed to demonstrate the nexus between the Cassidy Property and the service today's customers receive from it to be considered used and useful for ratemaking purposes. The record provides evidence that the Service Center Property remains used and useful to appellant's current customers. Therefore, its inclusion in rate base was proper. The CPULJ and Commission's factual findings were supported by substantial evidence on the record and were not arbitrary or capricious.

II.

Next, appellant avers that the Commission's denial of its claim for recovery costs constituted an error of law. Specifically, appellant contends that the Commission awarded

- 11 -

environmental remediation cost recovery in other instances, in accordance with the environmental protection directives in the statute, but not in the underlying case. The specific statutes appellant refers to are Public Utilities §§ 5-303 and 2-113(a)(2). Public Utilities § 5-303 states:

> A public service company shall furnish equipment, services, and facilities that are safe, adequate, just, reasonable, economical, and efficient, considering the conservation of natural resources and the quality of the environment.

The case at bar involved the issue of who would pay for the environmental remediation, the current customers or appellant's shareholders. The Commission applied its statutory environmental protection directives, however it has never said that it is an automatic cost recovery. Before the Commission can allow the costs of environmental remediation to be passed onto the ratepayers, it must look for evidence that remediation was legally mandated. *See* Public Utilities § 4-101(3).

The Commission allowed recovery of the portion of the remediation expense associated with the Service Center Property, because it determined that the expense was necessary, proper, used and useful in providing service to the public. However, after the Commission determines that an expense is necessary and proper, it determines whether the public service company's property is used and useful in providing service to the public. *See* Public Utilities § 4-101(3). In other cases in which the Commission awarded environmental remediation cost recovery, including cases appellant has cited to, the Commission determined that the property in those cases were used and useful in providing service to the public. Here, the Commission determined that the costs associated with

remediation of both the Service Center Property and the Cassidy Property were necessary and proper expenses. However, the Commission concluded that only the Service Center Property was used and useful in providing service to the public. The Commission properly applied its factual findings regarding the Cassidy Property and it did not ignore the statutes in rendering its determination. Thus, we perceive no error of law.

III.

Lastly, appellant contends that the Commission's denial of its claim constituted an unlawful taking without just compensation, in violation of the Maryland and United States Constitutions. Appellant quotes *Bluefield Waterworks & Improvement Co. v. P.S.C. of West Virginia,* 262 U.S. 679 (1923):

> Rates which are not sufficient to yield a reasonable return on the value of the property used at the time it is being used to render the service are unjust, unreasonable and confiscatory, and their enforcement deprives the public utility of its property in violation of the Fourteenth Amendment.
>
> * * *
>
> The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties.

*Id.* at 690, 693. Additionally, appellant quotes *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591 (1944):

> From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock. By that standard the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure

- 13 -

confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital.

*Id*. at 603 (internal citation omitted).

Appellant avers that based on these cases, denial of recovery of remediation costs would be unconstitutional because the Cassidy Property costs would exceed its net income in upcoming years and materially harm the company's financial condition. Appellant presented testimony that:

> If [appellant] is not permitted to recover all costs related to the cleanup of the site, accounting guidance requires that these costs be removed from the regulatory asset and recorded as an expense upon receipt of the Commission order related to this case. The total impact removing these costs from a regulatory asset and recording them to expense approximates $4.7 million dollars. As stated earlier, this is far greater than [appellant's] total annual net income (for instance, [appellant's] net income for 2012 was approximately $2.6 million dollars). The impact of deeming the costs related to the clean-up of the Hagerstown MGP site as non-recoverable would be financially devastating to the Company, even threatening the Company's ability to continue as a going concern if these costs are not recovered[.] If a company cannot sustain itself financially, this raises the possibility that the gas distribution service provided to the customers may be jeopardized. The full costs associated with [appellant's] environmental remediation at the former MGP site should be recoverable consistent with the Commission's prior decisions in similar cases.

The Chief Public Utility Law Judge considered this testimony in rendering its decision and determined:

> I find claims that these costs will result in a going concern issue for the [appellant] to be speculative at best. The sale of the remediated Cassidy property may help to offset the cost to the stockholders in the long run, and I find that the financial impact over the period of remediation can be weathered by [appellant] without putting the Company at too great a financial risk.

The Commission agreed with the Judge's determination. We do not consider this to be a violation of the Maryland or United States Constitutions. Appellant has not provided

- 14 -

authority holding that a refusal to permit a utility company to recover remediation costs in rate base constitutes an unlawful taking without just compensation. Accordingly, we shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**